## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **CHAD E. GOINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00154 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **L. FLEMING, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Chad E. Goins, Pro Se Plaintiff; Laura H. Cahill, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Chad E. Goins, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. Goins asserts that the defendant prison officials are not adequately accommodating his religious practices in several respects. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted in part and denied in part.

## I.

Goins is serving a Virginia prison sentence and has been confined at Wallens Ridge State Prison ("Wallens Ridge") since November 2013, in the custody of the Virginia Department of Corrections ("VDOC"). Goins states that he

is Sunni Muslim and must eat a diet and worship in a manner, individually and in group worship services, consistent with the Sunni beliefs.

In his Complaint, Goins sues Henry Ponton, VDOC Regional Administrator; L. Fleming[1] and Combs, Warden and Assistant Warden of Wallens Ridge; and the following individuals who also work at Wallens Ridge: Cope, a captain; Stallard, a unit manager; Coleman, a lieutenant; M. Hensley, who handles grievances; B. Ravizee, the ombudsman; M. Brogles, a kitchen supervisor; and Mitchell, a chaplain. Liberally construed, Goins'ss Complaint claims that the defendants' policies and practices burden his religious practices in the following respects: (1) The Common Fare Program prevents Goins from consuming certain foods allowed by his religious beliefs, thereby forcing him to comply with others' religious dietary beliefs; (2) Goins cannot pray or wear his kufi (religious head covering) during pod recreation; (3) The defendants do not provide an in room officer at all times during Sunni group religious services; (4) Dividing the Sunni Muslim services has left Goins'ss group with no qualified religious teacher; (5) Goins cannot access a bathroom during his religious services, while inmates of other religions meet for group services in the gym where they have access to a bathroom. Goins contends that the defendants' actions have violated his rights under RLUIPA and the First, Eighth, and/or Fourteenth Amendments. He also asserts

---

[1] Defendant Fleming's name was misspelled in the Complaint as "Flemming."

supplemental state law claims of negligence and intentional infliction of emotional distress.[2] For these alleged violations, Goins seeks monetary, declaratory, and injunctive relief.

The defendants move for summary judgment on the ground of qualified immunity and on the merits of Goins's claims. They offer affidavits from Fleming and Combs and copies of prison policies regarding the challenged religious accommodations. Goins has responded to the defendants' motion, making it ripe for disposition. Because Goins's claims arise from three different sets of facts, I will address the claims in three groups.

## II.

### A. Initial Matters.

Some of Goins's claims for monetary damages fail at the outset. The defendants are protected by immunity against damage claims for actions taken in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Moreover, monetary damages are not available under RLUIPA for any of the defendants' alleged actions. *See, e.g., Sossamon v. Texas*, 563 U.S. 277, 285-

---

[2] Goins also invokes as authority for his claims the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The FTCA provides a waiver of sovereign immunity when the federal government would be liable to the claimant for certain state law torts, such as negligence, committed by *federal* employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1). Because the defendants Goins has named are *state* officials, however, their actions do not give rise to any claim actionable under the FTCA. Therefore, I must summarily dismiss Goins's FTCA claims as legally frivolous. *See* 28 U.S.C. § 1915A(b)(1).

86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities).[3]   Therefore, I will grant summary judgment for the defendants on all claims for monetary damages against the defendants in their official capacities and all claims for monetary damages under RLUIPA.

## B.  Religious Diet.

1.  Factual Allegations.

Wallens Ridge, like many other VDOC facilities, offers the Common Fare diet to inmates whose religious dietary beliefs cannot be met by the VDOC's master menu.  The Common Fare menus feature protein items that are considered Kosher and do not contain any pork or pork derivatives prohibited by Islamic halal dietary rules.  These menus also provide participants with fresh, uncooked fruits and vegetables in keeping with halal rules.

Providing an inmate with the specialized Common Fare meals subjects the institution to additional financial costs and administrative burdens that it would not incur when providing that inmate with a regular diet.  Consequently, VDOC policy

---

[3]   These cases address the immunity question only as it pertains to RLUIPA as an exercise of congressional spending power, and the statute also invokes congressional commerce power.  *See* 42 U.S.C. § 2000cc-1(b).  I am satisfied that Goins's Complaint does not present a factual basis for a claim of monetary damages under the Commerce Clause nexus of RLUIPA, however.  *See, e.g., Rendelman*, 569 F.3d at 189.

requires inmates to demonstrate their religious sincerity to be approved to receive Common Fare meals and to sign a Common Fare Agreement by which they commit to comply with the terms of participation as a condition to receiving such meals. An inmate who violates a term of the agreement may be temporarily suspended from the diet, and repeated violations can lead to removal from the Common Fare program. Actions that violate the Common Fare Agreement are stated in the document itself and include: eating, trading, or possessing unauthorized food items from the regular meal line; giving away or trading a Common Fare food item; and purchasing or eating food items from the commissary that are inconsistent with the dietary requirements of the Common Fare program. Commissary items that violate Common Fare are clearly identified as such.

Goins signed a Common Fare Agreement on March 13, 2015, that stated, among other things, "This program provides me with an appropriate religious diet that meets or exceeds minimum daily nutritional requirements." Fleming Aff. Enclosure B, ECF No. 31-1. The Agreement also advised Goins that eating food items inconsistent with Common Fare dietary requirements or from the regular menu would violate the agreement and result in suspension of his religious meals.

In Claim (1) of the Complaint, Goins admits that the Common Fare menu is the only menu option available to him at Wallens Ridge that excludes the pork and

pork byproducts that his Sunni beliefs forbid him to eat. Goins complains, however, that he is forbidden by Allah from making foods unlawful that are not forbidden to Muslims. As specific examples, Goins states that his Sunni beliefs do not prohibit him from eating dairy and meat together or from eating the cheese and pasta products he can buy from the commissary. If he eats these food items, however, he violates the Common Fare Agreement and can be suspended from this menu option. Goins contends that by prohibiting him from eating foods that are *not* unlawful for Sunnis to eat, the VDOC policy forces him to comply with another religion's dietary restrictions and prevents him from freely exercising his own religious beliefs.

2. RLUIPA and the First Amendment.

To survive the defendants' Motion for Summary Judgment on any of his claims, Goins must present material disputed fact(s) that would persuade a jury to rule in his favor.[4] I find no such disputed fact material to his dietary claims under RLUIPA or the First Amendment.

---

[4] A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I must draw all reasonable inferences from the facts in favor of Goins, the nonmoving party. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

The First Amendment prohibits the government from imposing "a substantial burden" on an inmate's ability to exercise his religion unless the government can demonstrate an appropriate reason for the burden. *Lovelace v. Lee*, 472 F.3d 174, 198-99, n.8 (4th Cir. 2006). Under RLUIPA, "when a prison substantially burdens an inmate's exercise of religion, the prison must demonstrate that imposing the burden serves a compelling government interest and does so by the least restrictive means." *Id.* at 182. For either a First Amendment or a RLUIPA claim, then, the inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2016). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (RLUIPA context) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)) (First Amendment context).

Stated simply, the established facts in this case do not show that the challenged policy places any substantial burden on Goins's beliefs. The undisputed evidence establishes that Goins can consume his Common Fare meals without violating his Sunni dietary requirements to avoid pork and that these meals meet or exceed his nutritional needs. Goins presents no evidence that his inability

to consume food items that violate the terms of his Common Fare Agreement puts substantial pressure on him to *violate* any dietary mandate of his Sunni beliefs. At the most, this restriction is an inconvenience or difficulty, not sufficient to constitute a triable fact showing a substantial burden on his religious exercise. *See Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) ("No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion.") (internal quotation marks and citations omitted).

3. Other constitutional claims.

I also conclude that Goins has not stated any actionable claim under the Eighth Amendment or the Equal Protection Clause regarding his religious diet. He does not state facts showing that the Common Fare program deprives him of the nutrition he needs to live or that it has caused him any significant harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding that Eighth Amendment claim requires showing of deprivation of minimal necessities of life): *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (requiring showing that challenged condition caused, or is likely to cause, "significant physical or emotional harm, or a grave risk of such harm"). Goins also states no facts showing that this diet program treats him differently from other similarly situated inmates because of intentional

discrimination based on his religious views. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (stating standard for equal protection claim in prison context).

For the stated reasons, I conclude that all of the defendants are entitled to summary judgment on Goins's constitutional and RLUIPA challenges in Claim (1) concerning the Common Fare program. Consequently, I decline to exercise supplemental jurisdiction over any related claim Goins may be attempting to raise under state law, *see* 28 U.S.C. § 1367(c), and will dismiss such claims without prejudice.

### C. Prayer and Head Covering in Common Areas.

1. Factual Allegations.

In Claim (2), Goins complains that while in the pod, (a) he cannot pray and (b) he cannot wear his kufi, a religious head covering. His submissions indicate that his Sunni beliefs require him to wear a kufi at all times and to kneel to pray at five times each day, wherever he is.

The defendants explain that under VDOC Operating Procedure ("OP") 841.3, titled *Offender Religious Programs*, kufis are approved for possession by male inmates for use under the same restrictions that apply to other approved head coverings. *See* Combs Aff. ¶ 5, Enclosure A, ECF No. 31-2. Inmates' in-pod recreation occurs without searches of their clothing or headwear for contraband. The defendants state that because inmates could "easily conceal contraband and

notes" under kufis or other head coverings, they are prohibited from wearing any head covering during pod recreation. *Id.* On the other hand, because inmates are searched before and after outside recreation, they may wear head coverings, including kufis, during this activity and in their cells.

VDOC policy provides for opportunities when inmates can meet for religious services in designated areas under supervision, wear kufis, and use prayer rugs for kneeling prayers. Inmates may also use prayer rugs in their cells. The defendants explain, however, that for safety and security reasons, inmates cannot gather for group prayers or kneel on a prayer rug during in-pod recreation. The defendants state that religious activities in the pod may offend inmates of other faiths and that prayer rugs can be a slip hazard, cause friction between gangs, or be used as protection while attacking another inmate or staff. Inmates may conduct individual prayers in the pod if they remain in an upright position and do not gather in groups.

2. Analysis.

The defendants do not contest Goins's claim that his inability to wear his kufi and to kneel for prayer in the pod places substantial burdens on his religious practice. *Lovelace*, 472 F.3d at 187. Therefore, my inquiry here is whether the defendants have shown that the policies further state interests to the extent that the

burden on Goins's religious exercise is lawful under the First Amendment and RLUIPA.[5]

Because "courts are ill equipped to deal with the increasingly urgent problems of prison administration," they must defer to the expertise of prison officials in crafting policies addressing those problems, such as security, discipline, and efficient use of limited resources; therefore, a prison regulation that substantially burdens Goins's religious practices nevertheless survives a constitutional challenge "if it is reasonably related to legitimate penological interests.'" *Id.* at 199 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974); *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

This determination turns on a four-factor test: (1) "whether there is a valid, rational connection between the prison regulation" and the asserted government interest; (2) whether Goins was "deprived of all forms of religious exercise or [was] able to participate in other observances of [his] faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any obvious, easy alternatives to the challenged regulation." *Id.* at 200 (internal quotation marks and citation omitted). The burden of proof "is not on the State to prove the validity of prison regulations

---

[5] Goins does not identify any Eighth Amendment or equal protection concerns related to Claim (2).

but on [Goins] to disprove it" under the *Turner* factors. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

RLUIPA provides federal statutory protection of prisoners' religious exercise under a stricter legal standard than the First Amendment requires. If an inmate presents admissible evidence that the challenged policy substantially burdens his exercise of religion, then to survive a RLUIPA challenge, prison officials must prove that their policy is the "furthers a compelling governmental interest by the least restrictive means." *Incumaa*, 791 F.3d at 525.

> The least-restrictive-means standard is exceptionally demanding, and it requires the government to sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]. [I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.

*Holt v. Hobbs*, 135 S. Ct. 853, 863 (2015) (internal quotation marks and citations omitted).

a. Prayer in the Pod.

Goins offers no disputed fact contradicting the defendants' evidence of significant potential security hazards presented by allowing inmates to carry and use their prayer rugs during in-pod recreation. Goins also does not suggest any less restrictive means to address these risks than the present no-rug policy and does not dispute the evidence that inmates are permitted to pray during pod recreation if they do so in an upright position. On the present record, I conclude that the

-12-

defendants have shown that prohibiting inmates from kneeling on their prayer rugs during in-pod recreation furthers compelling security interests by the least restrictive means, *id.*, and is thus also rationally related to legitimate penological purposes under *Turner*. Thus, I will grant summary judgment for the defendants on Claim (2)(a).

b. Kufis in the Pod.

I find, however, that some aspects of Goins's Claim (2)(b) survive summary judgment. Goins disputes the defendants' evidence that kufis are a security risk because they can conceal notes or contraband. He points out that notes and other contraband could much more easily be concealed in the pockets of the pants he is permitted to wear during pod recreation, than under his kufi. He also states that inmates are subject to search at any time during pod recreation by the floor officer, who could easily and quickly search a kufi as needed. I conclude that Goins may, on these facts, be able to show that the kufi ban during pod recreation does not further a compelling security interest by the least restrictive means as required to prevail on his RLUIPA claim. *Incumaa*, 791 F.3d at 525.

Goins's First Amendment challenge to the kufi ban also survives summary judgment under the four-factor test in *Turner*, 482 U.S. at 89. While Goins can clearly practice his Sunni beliefs in other ways, such as diet and religious services, the facts are disputed as to the other *Turner* factors. Goins may be able to persuade

a fact finder that there is no valid connection between the ban on head coverings during pod recreation and preventing the concealment of contraband and that periodic searches of inmates' head coverings in the pod would be an easy alternative to the ban with little impact on prison resources. *Id.*

c. Qualified Immunity.

"Qualified immunity protects officials "who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The court must first

> identify the specific right that the plaintiff asserts was infringed by the challenged conduct. [The court] then engage[s] in a two-step inquiry, asking whether a constitutional violation occurred and whether the right violated was clearly established at the time of the official's conduct. Courts have discretion to take these steps in either order.

> . . . . A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. The unlawfulness of the official's conduct must be apparent in light of pre-existing law. To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.

*Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537-38 (4th Cir. 2017) (internal quotation marks and citations omitted).

I conclude that the defendants are entitled to qualified immunity against Goins's First Amendment claim for monetary damages here. Goins has not alleged facts showing that any of the defendants, personally, enacted the policy that

prohibits him from wearing his kufi during pod recreation. Thus, he fails to state any claim against them under § 1983 in their individual capacities. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

Moreover, the challenged regulation bars *all* head coverings during pod recreation, not only kufis. Such "neutral, generally applicable laws [or regulations] that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause." *Holt*, 135 S. Ct. at 859 (summarizing the holding of *Emp't Div., Dept. of Human Res. of Ore. v. Smith*, 494 U.S. 872, 884-85 (1990)). In light of *Smith* as clearly established law, the defendants could reasonably have believed that enforcing the general rule of banning headwear during pod recreation was constitutional, even if it had the incidental effect of burdening Goins's religious tenet to wear his kufi at all times. *Henry*, 652 F.3d at 531. Therefore, as to Claim (2)(b), I will grant summary judgment on Goins's First Amendment claim for monetary damages against the defendants in their individual capacities on the ground of qualified immunity. Consequently, I decline to exercise supplemental jurisdiction over any related claim Goins may be attempting to raise under state law, *see* 28 U.S.C. § 1367(c), and will dismiss such claims without prejudice. However, I will deny the defendants' motion as to Goins's Claim 2(b) seeking

injunctive and declaratory relief under RLUIPA and the First Amendment regarding kufi wearing during pod recreation.

### D. Sunni Muslim Group Worship.

1. Factual Allegations.

After experiencing "disruptive offenders and ongoing trouble with gangs," officials found it "necessary to divide the Sunni Muslim services at [Wallens Ridge] into two groups." Combs Aff. ¶ 7, ECF No. 31-2. The defendants state that this division was intended "to lower the numbers and allow for closer supervision." *Id.* The two Sunni groups meet at the same time in the prison's two "chow halls," and the group each inmate attends is determined by his housing assignment. "In accordance with OP 841.3(IV)(A)(7)(b), an officer is stationed outside each chow hall during religious services" to monitor the group from "a gun post [with] the ability to fire rounds of O/C gas if necessary." *Id.* at ¶ 9. A canine officer is also posted outside the chow halls, and a yard officer makes "continuous rounds" to monitor inmate activity. *Id.* "[A]n Imam comes from Richmond once a month for [Sunni Muslim] services." *Id.*

In Claims (3), (4), and (5), Goins contends that these accommodations do not meet his group worship needs. He insists that no officer is posted outside the Sunni services and no floor officer makes regular rounds. He also asserts that VDOC policy requires an *in-room* officer to monitor inmates' group meetings. He

complains that the Sunni group includes gang members and other "visitors" who talk loudly and thus interfere with his ability to worship and pray. Compl. ¶ 40, ECF No. 1. He has complained to the chaplain, who has promised to attend and monitor services, but has failed to do so. Goins claims that seeking help from a floor officer takes too long and draws unwanted attention from the disruptive inmates, who have accused him of being a snitch.

Goins fears that the assigned control booth officer is often too distracted by other duties to protect Goins in case of an inmate assault. He alleges that on July 30, 2015, [a]n assault occur[r]ed ten (10) minutes prior to the gun post officer knew anything was going on." *Id.* at ¶ 43. Goins states that the noise from the visitors and his fear for his safety inhibits his ability to hear the sermon and concentrate on his prayers.

Finally, Goins complains that splitting the Sunni community at Wallens Ridge into smaller groups for services has left one group without a qualified Sunni leader. He explains that the teacher of a Sunni community must be the person who has believed in Islam for the longest time and has the most knowledge of the Quran and "the Sunna." *Id.* at ¶ 47.

Goins also explains that his Sunni beliefs require him to cleanse himself with water before praying and that prayers offered while he needs to urinate will "not be accepted" by Allah. Compl. Ex. X, at 43, ECF No. 1-1. The defendants

state that "[t]here are bathroom facilities and sinks in the chow halls that are separate from the food preparation and service areas.  The offenders are allowed to use these facilities during services."  Combs Aff. ¶ 8, ECF No. 31-2.  Goins asserts that the officers do not open the chow hall bathrooms during the Sunni service for security reasons, thus preventing him from using the toilets and sinks in those facilities.  He also asserts that religious groups who conduct group services in the prison gym have access to bathrooms.

2.  Analysis.

    a.  Dividing and Monitoring Sunni Group Services.

    I cannot find that Goins has presented any material disputed fact showing a substantial burden on his religious practice related to the division or monitoring of the Sunni service or safety, as alleged in Claims (3) and (4).  Goins admits that since the division, he can still worship and pray with other Sunni believers.  He presents no religious basis that prevents the most experienced, knowledgeable Sunni Muslim in each of the two worship groups from being qualified to lead his community during services.

    Goins also does not dispute the defendants' evidence that a control booth officer is assigned to monitor the Sunni Muslim services and intervene when a disruption threatens inmate or staff safety.  Goins has expressed fear that others in the Sunni service might attack him while he is praying or for asking officers to

order them to be quiet.  He does not state facts showing that anyone in the Sunni service has threatened or caused serious harm to others.  Even if Goins's speculative fears of such attacks interfere with his own ability to hear or pray, I find no evidence that the current accommodations provided for the Sunni group services have pressured him to violate his beliefs.  Thus, he has failed to show a substantial burden placed on his religious practice by the defendants so as to violate RLUIPA or the First Amendment.  *Lovelace*, 472 F.3d at 187.

I also find no material fact in dispute showing an Eighth Amendment violation related to officials' monitoring of Sunni services.  Goins mentions one assault that allegedly occurred in July 2015 during a Sunni service in the chow hall.  He presents no evidence that he or anyone else suffered substantial harm, or that a pattern of similar incidents must have put the defendants on notice that the chow hall monitoring practices create a significant risk to the safety of the Sunni worshipers.  *See Farmer*, 511 U.S. at 837 (requiring evidence of defendants' deliberate indifference to excessive risk of serious harm).

Goins contends that the Sunnis are treated differently than other religious groups who have not been divided or who are allowed to conduct services in the gym.  I find no equal protection claim here, however.  Goins has not presented evidence that any of these other groups is as large as the Sunni community at Wallens Ridge or that the other groups caused the types of disruptions during

services that motivated the defendants to split the Sunni group. Without a showing that the Sunnis were similarly situated to the other groups in all relevant respects, Goins's equal protection claim fails under *Veney*. 293 F.3d at 730.

Finally, Goins complains that VDOC policy requires placing an officer in the room to maintain order during a group religious meeting. The defendants' alleged violations of VDOC policies are not independently actionable under § 1983, however. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *see also United States v. Caceres*, 440 U.S. 741, 751-52 (1978) (where a government agency is not constitutionally required to adopt certain regulations, a violation of those regulations, without more, does not "raise any constitutional questions").

For the stated reasons, I find no disputed fact in the record showing that either VDOC policy or any of defendants' actions have placed a substantial burden on Goins's religious practice, related to his allegations in Claims (3) and (4). Accordingly, I will grant summary judgment for the defendants as to these claims. Consequently, I decline to exercise supplemental jurisdiction over any related claim Goins may be attempting to raise under state law, *see* 28 U.S.C. § 1367(c), and will dismiss such claims without prejudice.

b.  Bathroom Access During Sunni Group Services.

I conclude on this record that Goins's Claim (5) survives summary judgment.  Goins offers evidence that the chow hall bathrooms are *not* available for inmate use during Sunni services, as the defendants have asserted.  *See* Goins Aff. ¶ 11, ECF No. 35-2; Ex. W, at 41, ECF No. 35-3.  Goins admits that he can usually urinate and wash himself in his cell before attending the group service.  He states, however, that sometimes inmates are called to services without the opportunity to return first to their cells to urinate or wash.  Sometimes an inmate may soil himself and need to wash again to continue his worship.  On these facts, Goins may be able to show that he has no access to a sink or toilet to perform necessary ablutions during Sunni group services and thus may suffer a substantial burden on his religious practice.

The defendants do not offer any evidence suggesting that denial of bathroom access for Sunni groups meets the *Turner* standard or furthers any compelling state interest by the least restrictive means.  As stated, their position is that the bathrooms *are* available to the Sunni group.  On this material dispute, I must deny summary judgment as Goins's Claim (5) seeking injunctive and declaratory relief under the First Amendment and RLUIPA.

3.  No Individual Capacity Claims.

Goins has not alleged, however, any instance when he, personally, has needed to wash or use the toilet during the Sunni service in the chow hall and one of the named defendants personally prohibited him from doing so.  He also does not allege that any of the named defendants personally implemented a policy prohibiting bathroom access during Sunni services.  Thus, he fails to state any claim against them under § 1983 in their individual capacities.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")  I will grant summary judgment as to Goins's claims for monetary damages against the defendants in their individual capacities, related to Claim (5).  Consequently, I decline to exercise supplemental jurisdiction over any related claim Goins may be attempting to raise under state law, *see* 28 U.S.C. § 1367(c), and will dismiss such claims without prejudice.

E.  Remaining Claims.

The only claims remaining before me now seek injunctive and declaratory relief regarding kufi use during pod recreation and bathroom access during Sunni group services.  Neither Goins nor the defendants state, with any factual support, which officials are or are not responsible, or have authority to make revisions to,

these policies or practices at Wallens Ridge. From the affidavits submitted by Fleming and Combs, warden and assistant warden, respectively, I find it likely that these defendants are responsible for the operations of the facility and have sufficient authority to orchestrate review and revision of policies that govern those operations. I find no evidence, however, that the other named defendants have such authority. *Iqbal*, 556 U.S. at 676. Accordingly, I will grant summary judgment for all defendants except Fleming and Combs in their official capacities as to Claims (2)(b) and (5) under RLUIPA and the First Amendment.

## III.

For the reasons stated, it is accordingly **ORDERED** as follows:

1. The Clerk shall correct the court's docket to reflect the proper spelling of defendant Fleming's last name;

2. The defendants' Motion for Summary Judgment (ECF No. 30) is GRANTED IN PART AND DENIED IN PART. The motion is DENIED as to Claims (2)(b) and (5) under RLUIPA and the First Amendment against defendants Fleming and Combs in their official capacities for injunctive and declaratory relief; the motion is GRANTED as to all other federal claims against all other defendants; and the Clerk will terminate these defendants as parties to the action;

3.     All supplemental state law claims and any claims under the Federal Tort Claims Act are hereby DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c) and 28 U.S.C. § 1915A(b)(1); and

4.     The claims remaining before the court are hereby referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, for mediation.

ENTER:   September 12, 2017

/s/  James P. Jones
United States District Judge